UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHAEL WAGERS,　　　　　　　　　　　　　　Case No. 1:15-cv-312

　　　　　Plaintiff,　　　　　　　　　　　　　　Dlott, J.
　　　　　　　　　　　　　　　　　　　　　　　　Bowman, M.J.
v.

COMMISSIONER OF SOCIAL SECURITY,

　　　　　Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Michael Wagers filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error for this Court's review. As explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

In July 2011, Plaintiff filed an application for Disability Insurance Benefits ("DIB"), and in October 2011, he filed an application for Supplemental Security Income ("SSI"). Plaintiff alleges a disability onset date of August 27, 2010[1] based upon a combination of physical and mental impairments, including back pain, seizures, depression, and vision

---

[1] Plaintiff initially alleged a disability onset date of 10/7/08 but subsequently amended that date to correspond with the date of his lumbar MRI.

1

problems. He has not engaged in any substantial gainful activity since his disability onset date, and is insured for purposes of DIB only through June 30, 2015.

After Plaintiff's applications were denied initially and upon reconsideration, he requested an evidentiary hearing before an Administrative Law Judge ("ALJ"). On July 9, 2013, a hearing was held before ALJ Ena Weathers in Cincinnati, Ohio. (Tr. 31-60). Plaintiff appeared with a representative,[2] and provided testimony, as did his wife and a vocational expert ("VE"). On September 27, 2013, ALJ Weathers issued a decision, concluding that Plaintiff was not disabled. (Tr. 11-25). The Appeals Council denied Plaintiff's request for review; therefore, the ALJ's decision remains as the final decision of the Commissioner.

Plaintiff was 38 years old at the time of the ALJ's decision, which is defined as a younger individual. He has a ninth grade education and past relevant work as a construction laborer. The ALJ determined that Plaintiff has the following severe impairments: "degenerative disc disease of the lumbar spine; obesity; major depressive disorder; and anxiety disorder." (Tr. 14). The ALJ found several of Plaintiff's impairments were "non-severe," including but not limited to vision issues that were correctable with glasses. (*Id.*) The ALJ found that other alleged impairments, including alleged seizures and mental retardation, were "not medically determined" due to a lack of evidence. (*Id.*) Finally, despite some evidence of possible abuse of alcohol and other drugs, the ALJ found substance use to be "non-severe" based upon the lack of record evidence relating to substance abuse diagnosis or treatment. (Tr. 14-15).

---

[2] Brook Anderson, a non-attorney representative employed by the same law firm that represents Plaintiff in this Court, represented Plaintiff at his administrative hearing.

2

The ALJ determined that none of Plaintiff's impairments, either alone or in combination, met or medically equaled any Listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, such that Plaintiff would be entitled to a presumption of disability. Instead, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a range of "unskilled light work" subject to the following additional limitations:

> He can occasionally use foot controls. The claimant requires the option to change position from sitting to standing for 1-2 minutes every 2 hours while remaining at his workstation. He can occasionally climb ramps and stairs. The claimant can never climb ladders, ropes, or scaffolds. He can occasionally stoop, kneel, crouch, and crawl. The claimant can perform simple, routine, repetitive tasks. He can occasionally superficially interact with the public and coworkers. The claimant can occasionally interact with supervisors. He cannot perform tandem tasks. The claimant cannot perform work that involves strict production quotas.

(Tr. 17). Based on the testimony of the vocational expert, the ALJ determined that although Plaintiff could not perform any past relevant work, he still could perform a significant number of jobs in the regional and national economy, including the representative occupations of night cleaner, laundry aide, and machine feeder. (Tr. 25). Therefore, the ALJ concluded that Plaintiff is not under a disability. (*Id.*)

In his Statement of Errors, Plaintiff argues that the ALJ erred: (1) by improperly discounting portions of the opinion evidence when determining Plaintiff's RFC; (2) by improperly assessing Plaintiff's credibility. The Commissioner filed a response that effectively refutes those assertions of error; Plaintiff filed no reply.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to

3

prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can

4

still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy.  *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits.  20 C.F.R. § 404.1512(a).  A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job.  42 U.S.C. § 423(d)(1)(A).

**B.  Specific Errors**

**1.  Treating Physician Evidence Relating to Chronic Back Pain**

Although Plaintiff testified before the ALJ that he was primarily unable to work due to his anxiety, he has never treated with a psychiatrist or other mental health care professional, and numerous medical records reflect his denial of any mental health symptoms to treating physicians.  On appeal to this Court, Plaintiff does not contest the ALJ's determination that his mental impairments were not disabling, nor does he contest any of the ALJ's findings at Steps 1-3 of the sequential analysis.  Instead, this appeal focuses on Steps 4 and 5 as they relate to Plaintiff's chronic back pain, which Plaintiff maintains is disabling.  Plaintiff argues that the ALJ committed reversible error by failing to give sufficient weight to the opinions of two treating physicians that he has lifting restrictions, requires multiple unscheduled breaks during the day, and would miss at least three days of work per month.

Plaintiff has a long history of back pain that relates back to a motor vehicle accident in 2003, and a subsequent ATV accident while intoxicated in 2006. (Tr. 387). In 2008 and 2009, records reflect that Plaintiff was abusing pain medications that had been prescribed to him for his chronic back pain, both by mixing them with other substances such as Xanax and Marijuana, and by trying to fill altered prescriptions (*See* Tr. 18, *citing e.g.*, Tr. 341, 401). Nevertheless, during the same time period, Plaintiff continued working full time hanging drywall. (*Id.*)

Plaintiff alleges that he stopped working in June 2010, although the evidence reflects modest earnings after that date. He amended his disability onset date from October 2008 to August 2010, a date that corresponds with a lumbar MRI that showed moderate to large right paracentral disc herniation at L5-S1 along with facet arthropathy leading to right lateral recess stenosis, moderate right neural foraminal stenosis and possible right L5 nerve involvement. (Tr. 332-333).

After his August 2010 MRI, on March 30, 2011, Plaintiff began pain management treatment with Dr. Michael Bertram. However, because Plaintiff had no interest in pursuing further injections or surgery, and wanted to continue with pain medications alone, Dr. Bertram referred Plaintiff to Dr. Kaleem for long-term medication management. (Tr. 379-380).

Dr. Mohammad Kaleem treated Plaintiff from early 2011 through April 2012. During his course of treatment with Dr. Kaleem, Plaintiff briefly returned to work in late 2011 and continued through early 2012, although his earnings never exceeded the SGA earnings test. Dr. Kaleem's records reflect multiple negative straight leg raise tests. (*See, e.g.*, Tr. 449, 455). Somewhat oddly, given Plaintiff's discharge from treatment with a prior physician for fraudulently altering a prescription, Dr. Kaleem reported no

6

history of substance abuse. (*See* Tr. 456). Of particular relevance to Plaintiff's claimed lifting restrictions, Dr. Kaleem's clinical examination records reflect normal 5/5 strength and normal range of motion. (*See, e.g.,* Tr. 458). A year after his last treatment note, on April 22, 2013, Dr. Kaleem completed a physical residual functional capacity ("RFC") questionnaire in which Dr. Kaleem opined that Plaintiff was not disabled in that he could tolerate low-stress jobs. However, Dr. Kaleem also endorsed several extreme physical restrictions that the VE testified would be work-preclusive. (Tr. 530-534).

Plaintiff quit treating with Dr. Kaleem in April 2012 and returned to Dr. Bertram for medication management from May 2012 through March 2013. Similar to Dr. Kaleem's records, Dr. Bertram's records are devoid of any reference to limitations on arm strength or lifting restrictions, while containing multiple references to Plaintiff's full range of motion. (*See, e.g.*, Tr. 496). Dr. Bertram's notes also reflect that EMG testing dated October 2, 2010 was "normal" with no apparent nerve injury, and repeatedly describe Plaintiff as "in no apparent distress" despite exhibiting "slow transitional movements" with an "antalgic gait." (*See, e.g.*, Tr. 379, 381). Straight leg raise tests were negative throughout Dr. Bertram's records. (*See, e.g.*, Tr. 387).

Three months after Plaintiff's last visit, on June 23, 2013, Dr. Bertram completed a physical RFC form. (Tr. 550). Like Dr. Kaleem, Dr. Bertram opined that Plaintiff would be able to tolerate low stress jobs, but also endorsed a number of extreme physical limitations that the VE testified would be work-preclusive. (*See* Tr. 550-551).

As the ALJ explained, the opinions of treating physicians like Drs. Bertram and Kaleem are entitled to controlling weight only when "well-supported by medically acceptable clinical and laboratory diagnostic techniques and…not inconsistent with the other substantial evidence in the case record." (Tr. 21). In addition, an opinion that

7

Plaintiff is disabled is not entitled to any deference, because the determination of disability is "the prerogative of the Commissioner, not the treating physician." (Tr. 20).

On appeal to this Court, Plaintiff asserts error in the ALJ's failure to give each opinion offered by Drs. Kaleem and Bertram "controlling weight." Plaintiff specifically complains that the ALJ erred by failing to include physical limitations endorsed by the treating physicians in their RFC forms that relate to: (1) Plaintiff's ability to lift; (2) Plaintiff's alleged need for unscheduled breaks; and (3) Plaintiff's alleged need for a large number of absences from work.

After setting forth the relevant factors to be considered, the ALJ explained in great detail her many reasons for declining to give the opinions of Drs. Kaleem and Bertram "controlling weight," because she believed the opinions were not well supported and were inconsistent with other substantial evidence in the record as a whole. I agree. Although the ALJ ultimately gave controlling weight to a few select portions of the referenced opinions, she discounted most of their RFC opinions, including the alleged restrictions on lifting, need for unscheduled breaks, and (implicitly) Plaintiff's alleged need for frequent absences:

> In terms of "Factor 1" (the length and frequency of treatment) and "Factor 2" (the nature and extent of the treating relationship), the claimant engaged in pain treatment with Dr. Kaleem prior to 2012. He engaged in treatment with Dr. Bertram in 2012. Both doctors had the opportunity to observe the claimant on several occasions. For these reasons, the undersigned found the claimant had established treatment relationships with both Dr. Kaleem and Dr. Bertram. Not all of Dr. Kaleem's and Dr. Bertram's opinions were given controlling weight because they did not satisfy the criteria of "Factor 3" (supporting evidence); "Factor 4" (consistency); and/or "Factor 5 (area of specialty).
>
> Specifically as a matter of first impression, Dr. Kaleem and Dr. Bertram were pain specialists and not primary care providers or surgeons. The claimant testified that he had not had a surgical evaluation. Dr. Bertram noted that he did not have many of the claimant's medical records. What he had revealed only minor problems with the claimant's thoracolumbar

8

spine. The claimant was able to walk. His back surgery appeared to be elective. The claimant testified that Dr. Kaleem had quit treating him and he had not seen the claimant in months (testimony).

Dr. Kaleem and Dr. Bertram opined that the claimant[']s neck movements were limited…. The undersigned gave these opinions little weight. X-rays (XR) of the claimant's cervical spine were normal. Upon physical examination, he had full range of motion in his neck.

Dr. Kaleem and Dr. Bertram opined that the claimant was limited to "sedentary" work…. The undersigned gave these opinions little weight. The claimant had no upper extremity limitations. His objective evidence revealed only minor problems with his thoracolumbar spine. The claimant had no evidence of radiculopathy in his lower extremities. His straight leg raises and EMG tests were normal. Upon physical examination, the claimant had full motor strength in his extremities and normal reflexes (i.e. no evidence of neurological problems).

Dr. Kaleem and Dr. Bertram opined that the claimant could tolerate a total of 4 hours of standing and sitting during an 8-hour work period. Dr. Kaleem added that the claimant needed to take 3-4 unscheduled work breaks during an 8-hour workday. Dr. Bertram added that the claimant needed to take unscheduled 10-minute work breaks every 30 minutes…. The undersigned gave these opinions little weight. The claimant's lumbar MRI and normal EMG did not support this degree of limitation. Moreover, upon physical examination, the claimant's reflexes and straight leg raises were normal. There was no evidence of leg length or calve width discrepancies that would indicate lack of use for half of the day. There was no evidence of muscle weakness or atrophy (i.e. deconditioning)….

Dr. Kaleem opined that the claimant needed to elevate his legs 8 inches for 30% of an 8-your working day…. The undersigned gave this opinion little weight. There was no evidence [of] … swelling in his lower extremities or any other peripheral vascular condition that would make this necessary….

Dr. Kaleem and Dr. Bertram opined that the claimant would need to have the option to alternate between sitting and standing….The undersigned gave these opinions controlling weight because they were consistent with the claimant's objective medical tests and his…testimony….

Dr. Kaleem and Dr. Bertram opined that the claimant did not need a cane to ambulate.... The undersigned gave these opinions controlling weight….

(Tr. 21-22). The ALJ generally discounted the treating physicians' postural limitations,

citing the lack of any record evidence to support those limitations, and contrary MRI and

9

negative EMG evidence. (Tr. 22). On the other hand, the ALJ gave controlling weight to their opinions that Plaintiff could "never climb ladders, ropes, or scaffolds." (Tr. 22). Last, the ALJ gave the opinions that Plaintiff's pain "constantly interfered with his ability to concentrate….significant weight." (Tr. 22). Although the ALJ did not believe Drs. Bertram and Kaleem had any expertise to provide mental capacity opinions, she acknowledged that they had met Plaintiff several times and could observe his behavior firsthand. She found their opinions on Plaintiff's ability to concentrate to be "consistent with the claimant's ability to understand, remember, and carry out simple, 'low stress' tasks such as driving and accomplishing his other activities of daily living while living alone." (Tr. 23).

### a. Lifting Restrictions

Limiting Plaintiff to "light" work automatically limited him to lifting no more than 20 pounds at a time, with frequent lifting or carrying up to 10 pounds. *See* 20 C.F.R. §404.1567. The undersigned finds no error in the ALJ's failure to include additional lifting restrictions or her conclusion that the record lacks evidence of "problems with [Plaintiff's] neck, arms, or legs." In addition to the lack of any evidence to support more extreme lifting restrictions, Plaintiff testified that he lived alone in a house where he does light chores such as laundry. (Tr. 20). Plaintiff points to fleeting and vague references in Dr. Kaleem's records such as "weakness in bilateral lower extremities and all muscles tested" (*see* Tr. 387), and to "some muscle weakness noted on exam" (Tr. 449) to support greater lifting restrictions. Having examined the cited records, the undersigned finds no error. The records relate at most to occasional lower extremity weakness, not upper extremity weakness.

The only evidence in support of lifting restrictions that would eliminate all "light" work are the conclusory April and June 2013 RFC forms completed by Drs. Bertram and Kaleem stating that Plaintiff can only "occasionally" lift up to 10 pounds, can "rarely" lift 10 pounds,[3] and can "never" lift 20 pounds or more. (Tr. 533, 553). However, there is no support in either physicians' clinical records or in other medical evidence of record that would support - or even be consistent with - such a restriction. The only other support for any lifting restriction was Plaintiff's testimony, which, for the reasons discussed below, the ALJ reasonably discredited.

Aside from the lack of support in the clinical records of Drs. Kaleem and/or Bertram, none of the other medical evidence of record reflects upper extremity weakness. On February 6, 2012, Plaintiff appeared for a clinical examination by consulting physician Martin Fritzhand, M.D. That examination included manual muscle testing, which reflected entirely normal shoulder, elbow, wrist, finger, hip, knee, and foot muscles, with full bilateral grip strength and manipulation skills. (Tr. 433-435). Dr. Fritzhand noted good range of motion, and "no evidence of nerve root damage as all sensory modalities are intact and there is no evidence of muscle atrophy." (Tr. 438).[4] Plaintiff declined the offer of a neurological evaluation to determine whether he was a candidate for back surgery, explaining that his pain was improving. (Tr. 19, citing Tr. 505). Dr. Fritzhand completed a physical RFC form in which he opined that Plaintiff's limitations were not disabling.

---

[3] Dr. Kaleem allowed that Plaintiff could occasionally lift 10 pounds, and rarely lift 20 pounds. (Tr. 533).
[4] As Plaintiff points out, in contrast to Drs. Bertram and Kaleem, during his clinical exam in February 2012, Dr. Fritzhand found "straight leg raising is diminished to 50 degrees bilaterally." (Tr. 438). That finding is not grounds for reversal given that "substantial evidence" including multiple negative straight leg raising tests both before and after February 2012 support the ALJ's RFC findings and ultimate disability determination.

11

Other clinical records also support the ALJ's findings. For example, on August 3, 2012, Plaintiff reported to a treating physician that although he does not have a regular exercise routine, he "walks everywhere." (Tr. 526). No musculoskeletal symptoms were noted, and Plaintiff appeared in "no distress." (*Id.*) By June 2013, Plaintiff reported being "very active at home with exercises." (Tr. 537).

### b. Interference with Ability to Concentrate/ Unscheduled Breaks

The undersigned also finds no error in the ALJ's failure to include additional RFC limitations relating to Plaintiff's ability to concentrate. In their April and June 2013 RFC forms, Drs. Kaleem and Bertram opined that Plaintiff's "experience of pain or other symptoms [are] severe enough to interfere with attention and concentration needed to perform even simple work tasks" "[c]onstantly." (Tr. 531, 551). Neither believed Plaintiff to be incapable of work, however, as each opined that Plaintiff remains "[c]apable of low stress jobs." (*Id.*). Both physicians responded affirmatively to a question asking whether Plaintiff would "sometimes need to take unscheduled breaks during an 8-hour working day." Dr. Kaleem stated that Plaintiff would need 3-4 breaks per day to rest for 5 minutes before returning to work. (Tr. 532-533). Dr. Bertram stated that Plaintiff would need even more frequent breaks, averaging every 30 minutes and requiring 10 minutes of rest prior to returning to work. (Tr. 552-553).

Plaintiff complains that despite the ALJ's statement that she was giving "significant weight" to the treating physicians' respective "concentration" opinions, despite finding them not to be "'acceptable sources' for mental capacity opinions," the ALJ failed to include the treating physicians' restrictions concerning the need for frequent unscheduled breaks. I find no reversible error. The ALJ gave the "concentration" portion of the opinions "significant" but not "controlling" weight. She

12

explained that she accepted the opinions to the extent consistent with Plaintiff's ability to carry out "simple, 'low stress' tasks. (Tr. 23). She then limited Plaintiff to "simple, routine, repetitive tasks," with no "tandem tasks" and no "work that involves strict production quotas." (Tr. 16-17). In determining the Plaintiff's mental RFC including limitations as concentration, persistence and pace, the ALJ also considered the opinions of consulting psychologists, none of whom offered opinions more restrictive than determined by the ALJ.

The fact that the ALJ included, in one hypothetical to the VE, an additional restriction that the person be off task 25% of the day does not mean that the ALJ found Plaintiff to have that limitation. It is common for an ALJ to elicit testimony from a VE using multiple hypotheticals, and later to issue an opinion based on only one of those hypotheticals, as the ALJ did in this case. In her written opinion, the ALJ specifically rejected Dr. Bertram's RFC opinion that Plaintiff would need frequent unscheduled work breaks. The ALJ characterized that opinion as entitled to "little weight" and cited the overwhelming contrary medical evidence that supported a lack of such limitation. As the Commissioner points out, no doctor, including Drs. Kaleem and Bertram, opined that Plaintiff's pain would cause him to be off task 25% of the day.

The ALJ's opinion reflects that Plaintiff, who lives alone, "is able to suitably accomplish adaptive activities such as self-care, driving, shopping, and attending appointments alone on a consistent basis without direct supervision." (Tr. 15). Viewing the record as a whole, I find no articulation error in the "good reasons" provided for not giving controlling weight to the opinions of the two pain management specialists. However, to the extent that the ALJ might have included more explicit discussion of her

13

reasons for rejecting their opinions regarding the need for "unscheduled breaks," I conclude that any error was harmless.

### c. Alleged Need to Regularly Miss Work

On his RFC form, Dr. Bertram checked a box offering an "estimate" that Plaintiff would miss "more than four days per month" on average as a result of his "impairments or treatment." (Tr. 554). Dr. Kaleem similarly checked a box reflecting his own "estimate" that Plaintiff is likely to be absent about three days per month for his "impairments or treatment." (Tr. 534). No explanation is provided for either opinion.

Plaintiff hypothesizes that because both doctors are pain specialists, they must have been opining Plaintiff's pain level alone would require him to be frequently absent from work. But the doctors themselves offered no such opinions. The form asks for an "estimate" regarding absences for "impairments or treatment." Therefore, it is pure speculation to guess whether the physicians believed Plaintiff would be absent due to pain, or his need to schedule doctors' appointments, or medication side effects, or for some other reason. On the whole, it is clear that the ALJ properly rejected the treating physician's opinions as not well supported and as inconsistent with other substantial evidence of record. The ALJ analyzed minute portions of the treating physicians' RFC opinions in unusual depth, and should not be penalized for failing to discuss her reasons for rejecting one discrete portion that offered a wholly speculative and unsupported and vague "estimate" that Plaintiff would be absent from work more than 3-4 days per month. Based upon the record as a whole, including the lack of evidence to support such a high rate of absenteeism, the undersigned concludes that the ALJ's failure to discuss that portion of the opinions of the treating physicians was, at most, harmless error.

14

### 2. Credibility

In his second assignment of error, Plaintiff contends that the ALJ erred by failing to apply the regulatory factors set forth in SSR 96-7p in evaluating his credibility. An ALJ's credibility assessment must be supported by substantial evidence, but "an ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Com'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, his testimony, and other evidence. *Warner v. Com'r of Soc. Sec.*, 375 F.3d at 387, 392 (6th Cir. 2004).

In this case, the ALJ determined that Plaintiff's statements "concerning the intensity, persistence and limiting effects" of his symptoms "are not entirely credible." (Tr. 17). At Step 2 of the sequential analysis, the ALJ pointed out that despite alleging that he was disabled by vision problems, seizures, and mental retardation in his disability applications and/or testimony, there was no medical evidence relating to those alleged conditions. (Tr. 14). The ALJ also noted that although he did not earn enough money to constitute substantial gainful activity, Plaintiff did return to work in 2011 and early 2012, which was a reflection that "the claimant's daily activities were, at least at times, somewhat greater than the claimant had generally reported." (Tr. 14). *See generally Miller v. Com'r of Soc. Sec.,* 524 Fed. Appx. 191, 194 (6th Cir. 2013)(holding that the ALJ did not error by considering ability to maintain part-time employment as one factor relevant to disability determination).

15

> Later in her opinion, the ALJ explained in more detail that Plaintiff
>
> made inconsistent statements about his medical and employment history that weighed against his credibility in general. Specifically, the claimant said that he had memory problems that had caused his accidents. The undersigned had no evidence from the 2003 accident. The evidence demonstrated that the claimant was actually intoxicated when he crashed his ATV in 2006.
>
> In addition, the claimant testified that he had been fired from every job due to his alleged memory problems. As mentioned earlier, there were no school records or academic tests in the evidence. Moreover, the evidence revealed that the claimant was mentally capable of owning and running his own drywall business.
>
> The claimant testified that he was too anxious to leave his house and did not drive. Yet he was able to drive himself to his psychiatric evaluation and attended it alone….
>
> The claimant engaged in activities that were not limited to the extent one would expect, given his complaints of disabling symptoms and limitations. Specifically, the claimant was physically and mentally competent to live alone. He followed a daily routine. The claimant spent the majority of the day alternating between sitting and lying down while watching television for hours (testimony).

(Tr. 23; *see also generally* Tr. 17-19). The ALJ considered that Plaintiff lived alone and was able to perform self-care, shop, drive, and attend appointments by himself. (Tr. 15). Record evidence reflects he was able to interact independently with others, and got along with his parents and son. (Tr. 426-31).

Plaintiff complains that the ALJ's analysis failed to adequately consider evidence that supported his allegations of disabling pain, including the testimony of Plaintiff and his wife that he does nothing but watch television all day, had moved his bed to the front room, and that she assists him by pulling off his boots because he has a hard time bending over. (Tr. 53). Although he can shower independently, his wife testified that she also helps him "step over into the tub" if he wants to take a bath instead of a shower. Despite testimony that she assists him with virtually everything, his wife also

16

testified that she stops by his house only a "[c]ouple times a week," (Tr. 52). The frequency and brevity of her visits presents an inference that Plaintiff is able to take care of himself over long periods when she is not there. When asked to describe his limitations, his wife testified that she gets "aggravated" because "[h]e's a grown man and I'm taking care of him," because "[a]pparently he can't do nothing." (Tr. 52). She did not testify specifically about his pain level, but did attest that his primary limitation is psychiatric in nature, not physical. (Tr. 52-53). However, she subsequently testified that his mental and physical problems were "equal" because he is "just a big ball of mess here." (Tr. 54).

The ALJ was not required to unequivocally accept the testimony of Plaintiff that his pain is disabling, nor was the ALJ required to consider only those portions of his wife's testimony that would have supported a more favorable credibility finding. The undersigned finds substantial evidence in the record to support the ALJ's negative credibility determination.

Plaintiff argues that the ALJ also failed to discuss side effects that can result from Plaintiff's pain medications. However, numerous records reflected that Plaintiff reported to his physicians that he did not experience any side effects from his medications. (*See, e.g.*, Tr. 357, 363, 371, 375, 460, 474, 504, 508, 512, 521, 536). In fact, by June 2013, Plaintiff reportedly was "working limited duties" and stated that his pain medications lowered his pain by more than 30%. (Tr. 536).

Plaintiff points more generally to the records of Drs. Kaleem and Bertram to prove that he suffers from chronic and severe lower back pain. However, whether Plaintiff suffers from chronic pain is not disputed; the sole area of disagreement is whether Plaintiff's pain is disabling. For the reasons discussed, the Court finds no error.

17

As other courts have noted, many people experience chronic pain that is less than disabling. *See Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 230-231 (6th Cir. 1990)(affirming ALJ's determination that back pain from nerve root compression and herniated disc, coupled with degenerative changes, was not disabling); *see also generally, Daniels v. Com'r of Soc. Sec.*, 2011 WL 2110145 at*4 (S.D. Ohio May 25, 2011)(normal neurological findings or other results of objective testing may be considered in determining credibility of subjective complaints, citing *Cross v. Com'r of Soc. Sec.*, 373 F. Supp.2d 724, 732 (N.D. Ohio 2005)).

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be **AFFIRMED** as supported by substantial evidence in the record as a whole, and that this case be **CLOSED.**

                                           */s Stephanie K. Bowman*
                                           Stephanie K. Bowman
                                           United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

MICHAEL WAGERS,                    Case No. 1:15-cv-312

    Plaintiff,                            Dlott, J.
                                           Bowman, M.J.

  v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant

### NOTICE

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).